IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 15-cv-00172-MSK-STV

NIGEL GILLINGS,

    Plaintiff,

v.

LT. BANVELOS;
LT. YAGAR; and
H. WALKER,

    Defendants.

**ORDER ADOPTING RECOMMENDATION TO DISMISS THE PLAINTIFF'S CLAIMS**

**THIS MATTER** comes before the Court on the Magistrate Judge's April 12, 2017 Recommendation **(#110)** that the Defendant's Motion to Dismiss and for Summary Judgment **(#84)** be granted and the Plaintiff's timely filed Objection **(#111)**.

## JURISDICTION

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## FACTS

The Court offers a brief summary of the facts here and elaborates as necessary in its analysis. All evidence is construed most favorably to Mr. Gillings.

Mr. Gillings, who appears *pro se*,[1] is currently incarcerated in Florida, but previously had been incarcerated in the United States Penitentiary in Florence, Colorado. On May 20, 2012,

---

[1] Mindful of his *pro se* status, the Court reads his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper

1

while at the United States Penitentiary, Mr. Gillings' cellmate informed him and prison officials that demons almost caused him to kill Mr. Gillings in his sleep. Prison officials removed Mr. Gillings from the cell, and Lt. Yagar placed him in an unoccupied cell for the night.

The next day, Lt. Banvelos escorted Mr. Gillings to a different cell occupied by Ellis Rosado. Mr. Gillings refused to share the cell with Mr. Rosado because Mr. Rosado had been assaulted by Mr. Gillings' former cellmate and Mr. Gillings feared that Mr. Rosado would retaliate against him. Instead, Mr. Gillings asked to return to the unoccupied cell. Lt. Banvelos refused and took Mr. Gillings to the law library.

That night, prison officers escorted Mr. Gillings to a "cage"[2] outside the prison's special housing unit ("SHU"). He was given a mattress, pillow, blanket, a bottle in which to urinate, a bag in which to defecate and was locked in for the night. During the night, Mr. Gillings asked for an additional blanket, which was provided.

In the morning, Mr. Gillings was escorted to the law library and later to the multipurpose room. He told Lt. Burton that he had not bathed, had urinated in bottles, and had defecated in bags even though there was an unoccupied cell available. Lt. Burton allowed Mr. Gillings to shower and use the restroom, but Mr. Gillings was then returned to the "cage" to sleep.

After spending a second night in the "cage", Mr. Gillings was taken to the multipurpose room. He asked Lt. Burton if he could sleep in the unoccupied cell. His request was denied, but

---

English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Gillings of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Gillings according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[2]This is the term used by Mr. Gillings, but no other description is supplied.

he was allowed to sleep in the multipurpose room. The following day, Mr. Gillings agreed to share a cell with Mr. Rosado.

Based on these events, Mr. Gillings submitted an informal administrative grievance to prison officials. When he did not receive a response, he filed a formal administrative grievance with the warden. Again, he received no response. Over the course of approximately two years, he filed additional administrative grievances and sent various letters complaining of this incident. He states that he never received a response from local officials, and after being told by regional and national officials that he need to file his grievances with his local officials, he filed this action.

## **PROCEDURAL HISTORY**

Mr. Gillings asserts two claims. His first claim seeks an award of monetary damages against Lt. Banvelos and Lt. Yagar for violation of his Eighth Amendment rights. The second claim seeks mandatory injunctive relief in the form of a sentence reduction or restoration of good-conduct time that he lost as a result of an incident report that he contends was false.

The Defendants have included several requests in their motion. **(#84).** With regard to Mr. Gillings' first claim for relief, they seek dismissal due to failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In addition, they seek dismissal under the doctrine of qualified immunity. They also seek summary judgment due to Mr. Gillings failure to exhaust his administrative remedies and failure to bring this action within the period specified in the applicable statute of limitation.[3] The Defendants move to dismiss Mr. Gillings' second claim as moot.

---

[3] Mr. Gillings' claims were previously dismissed on grounds that the applicable statute of limitations had run and, under *Braxton v. Zavaras*, 614 F.3d 1156 (10th Cir. 2010) and *Rosales v. Ortiz*, 325 Fed. App'x 695 (10th Cir. 2009)(unpublished), there were not grounds to equitably

The Court referred the motion to the Magistrate Judge for a recommendation. On April 12, 2017, the Magistrate Recommended **(#110)** that Mr. Gillings' first claim be dismissed for failure to exhaust administrative remedies and that Mr. Gillings' second claim be dismissed as moot.

Mr. Gillings timely filed his Objection **(#111)** to the Magistrate Judge's Recommendation. He nominally asserts sixteen factual objections to the dismissal of his first claim but none as to the second claim. There being no objection to dismissal of the second claim and no clear error, the Court adopts the Magistrate Judge's Recommendation in that regard.

As to the first claim, Mr. Gilling's objections fall into two categories. First, he argues that the evidence shows that he exhausted his administrative remedies. Second, to the extent that he did not exhaust all available remedies, he argues that his failure to exhaust was excused because officials working for the Bureau of Prisons thwarted his ability to do so.

## **ANALYSIS**

**A. Standard of Review Applicable to the Objection to the Magistrate Judge's Recommendation**

Pursuant to Federal Rule of Civil Procedure 72(b), the Court reviews the objected-to portions of the Recommendation *de novo*.

**B. Summary Judgment**

The Court begins with the Defendants' request for summary judgment under Federal Rule of Civil Procedure 56 on grounds that Mr. Gillings failed to exhaust his administrative remedies, which the Magistrate Judge recommended should be granted.

---

toll the running of limitations. On appeal, the Tenth Circuit held that neither *Braxton* nor *Rosales* apply in this matter, reversed the dismissal, and remanded for further proceedings. *Gillings v. Banvelos*, 650 Fed. App'x 622, 624 (10th Cir. 2016) (unpublished).

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Thus, the primary question presented to the Court in considering a Motion for Summary Judgment or a Motion for Partial Summary Judgment is: is a trial required?

A trial is required if there are material factual disputes to resolve. As a result, entry of summary judgment is authorized only "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). A fact is material if, under the substantive law, it is an essential element of the claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the conflicting evidence would enable a rational factfinder to resolve the dispute for either party. *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

The consideration of a summary judgment motion requires the Court to focus on the asserted claims and defenses, their legal elements, and which party has the burden of proof. Substantive law specifies the elements that must be proven for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson*, 477 U.S. at 248; *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). As to the evidence offered during summary judgment, the Court views it the light most favorable to the non-moving party, thereby favoring the right to trial. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

Motions for summary judgment generally arise in one of two contexts—when the movant has the burden of proof and when the non-movant has the burden of proof. Each context is handled differently. When the movant has the burden of proof, the movant must come forward with sufficient, competent evidence to establish each element of its claim or defense. *See* Fed. R.

Civ. P. 56(c)(1)(A). Presumably, in the absence of contrary evidence, this showing would entitle the movant to judgment as a matter of law. However, if the responding party presents contrary evidence to establish a genuine dispute as to any material fact, a trial is required and the motion must be denied. *See Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

A different circumstance arises when the movant does not have the burden of proof. In this circumstance, the movant contends that the non-movant lacks sufficient evidence to establish a *prima facie* case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party must identify why the respondent cannot make a *prima facie* showing; that is, why the evidence in the record shows that the respondent cannot establish a particular element. *See Collins*, 809 F.3d at 1137. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, then a trial is required. Conversely, if the respondent's evidence is inadequate to establish a *prima facie* claim or defense, then no factual determination of that claim or defense is required and summary judgment may enter. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### C. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (a), requires a prisoner to exhaust administrative remedies before bringing a civil action related to prison conditions. Failure to satisfy the exhaustion requirement is an affirmative defense that a defendant must plead and prove. *Jones v. Bock*, 549 U.S. 199, 216-17 (2007). To properly exhaust administrative remedies, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* Substantial compliance with procedural rules is not sufficient. *Fields v. Okla.*

*State Penitentiary,* 511 F.3d 1109, 1112 (10th Cir.2007). A prisoner must first exhaust administrative remedies, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Porter v. Nussle,* 534 U.S. 516, 524 (2002).

To exhaust administrative remedies, federal prisoners must comply with the requirements of the Administrative Remedy Program ("ARP") established by the United States Bureau of Prisons. *Patel v. Fleming*, 415 F.3d 1105, 1108-09 (10th Cir. 2005). ARP has four steps. First, with limited exceptions, an inmate must attempt to resolve his or her issue of concern informally with prison staff. 28 C.F.R. § 542.13. If informal resolution fails, the inmate must submit a formal, written grievance within 20 calendar days following the event giving rise to his or her issue of concern. 28 C.F.R. § 542.14(a). The prison warden must respond in writing to the formal grievance within 20 calendar days. 28 C.F.R. § 542.18. If the grievance is denied, the inmate must appeal in writing to the regional director within 20 calendar days. 28 C.F.R. § 542.15(a). The regional director must respond in writing to the appeal within 30 days. 28 C.F.R. § 542.18. If the regional director denies the appeal, the inmate must appeal in writing to the national general counsel within 30 days. 28 C.F.R. § 542.15(a). The general counsel must respond in writing to the appeal within 40 days. 28 C.F.R. § 542.18.

However, the PLRA requires only that an inmate comply with these requirements if they are "available". *See Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir.2010). That is, an inmate's failure to comply with ARP is excusable if its procedures become unavailable because of the action or inaction of prison officials. *See Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011). The failure of a prison official to respond to a prisoner's grievance within the time limit required by ARP renders the prisoner's administrative remedies unavailable. *See Tuckel*, 660 F.3d at 1252; *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

The Defendants contend that Mr. Gillings failed to complete the administrative review process. The only evidence that they present is a summary record of the administrative claims that Mr. Gillings has submitted since the year 2000. The summary shows that 12 days after the incident, he made a formal grievance with the warden and that the grievance was denied on the same day because Mr. Gillings had not attempted to resolve the matter informally. The summary also shows that Mr. Gillings made a second formal grievance to the Warden 21 days after the incident. Although the grievance was technically late, it was deemed timely, and was denied the day it was received for the same reason – that Mr. Gillings had not attempted to resolve the matter informally. The denial gave Mr. Gillings five days to resubmit his grievances, but he did not do so.

The summary shows that Mr. Gillings did not appeal the denial of either of his first two grievances within the allowed 20 day period. Instead, weeks after the deadlines passed, Mr. Gillings filed additional formal grievances with the warden, the regional director, and general counsel. The summary makes a *prima facie* showing that Mr. Gillings failed to complete the administrative process established by the BOP.

However, this showing is not conclusive. In his Response[4] to the Defendants' Summary Judgment Motion (**#103**), Mr. Gillings states that as required, within 12 days after the incident he submitted an informal grievance to prison staff. No one responded to his grievance. He then submitted two formal grievances to the warden, 12 days and 21 days after the incident. He did

---

[4] Mr. Gillings' statements in his opposition are unsworn and do not comply with the requirements for Federal Rule of Civil Procedure 56, and the Court could disregard them. *See Barnes v. U.S.*, 173 Fed. App'x 695, 698 (10th Cir. 2006). However, in deference to Mr. Gillings' *pro se* status and his apparent lack of familiarity with litigation formalities, the Court will assume that, if called upon to affirm the truth of the statements submitted in opposition to the Defendants' Motion for Summary Judgment based on his personal knowledge, he would do so. Accordingly, the Court will treat his statements as to areas within his personal knowledge as affidavits under 28 U.S.C. § 1746.

not receive a response to the grievances within the 20 days that followed. The summary offers no indication that the denial of Mr. Gillings' formal grievances were ever provided to him, and without knowledge that his grievances had been denied for failure to submit an informal grievance, Mr. Gillings had no way to pursue subsequent administrative requirements in a timely manner.

Viewing the evidence in the light most favorable to Mr. Gillings, there is a question of fact as to whether he exhausted his administrative remedies or whether he was prevented from doing so by prison officials. If the prison warden never gave Mr. Gillings notice of the denial of his grievances and the reason therefore, Mr. Gillings' failure to exhaust administrative remedies could be excused. *Tuckel*, 660 F.3d at 1252; *Aquilar-Avellaveda*, 478 F.3d at 1225. Accordingly, Mr. Gillings' Objection to dismissal of his claims on this ground is sustained.

### D. Qualified Immunity

To support dismissal of Mr. Gillings' claims under Federal Rule of Civil Procedure 12(b)(6), the Defendants also invoke the doctrine of qualified immunity.

Generally, in considering a motion to dismiss pursuant to Rule 12(b)(6), the Court is limited to the factual allegations of the Complaint. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001). It accepts all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). A claim is subject to dismissal unless it is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first

discards those averments in the Amended Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" as compared to merely being "conceivable" or "possible". What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," are not sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

The doctrine of qualified immunity can be asserted at several junctures in a case. Under the doctrine of qualified immunity individual government actors are protected from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

When a defendant asserts a qualified immunity defense in a motion to dismiss, the Court determines (1) whether a complaint's allegations are sufficient to show that the defendant violated a constitutional or statutory right and (2) whether the constitutional or statutory right was clearly established when the alleged violation occurred. *See Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004). The Court may undertake these two inquiries in whichever order it deems fit. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

For all practical purposes, the first inquiry is indistinguishable from the inquiry that the Court would take in assessing a garden-variety Rule 12(b)(6) challenge to the sufficiency of the pleadings. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). The "clearly established" inquiry

examines whether the contours of the constitutional right were so well-settled, in the particular circumstances presented, that "every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 132 S.Ct. 2088, 2093 (U.S. 2012).

### 1. Constitutional Violation

The Amended Complaint alleges that being forced to sleep in a "cage" with only a bag in which to defecate and bottle in which to urinate, causing him to be in close proximity to his own waste, violated Mr. Gillings' his right to be free from cruel and unusual punishment as provided in the Eighth Amendment to the U.S. Constitution. The Defendants argue that even if these events occurred, they did not give rise to an Eighth Amendment violation.

The Eighth Amendment states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The prohibition on cruel and unusual punishments requires that prison officials maintain "humane conditions of confinement." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

To state a cognizable Eighth Amendment claim, a prisoner must show facts sufficient to establish both an objective component and a subjective component. For the objective component, he must show that his conditions of confinement deprived him of "the minimal civilized measure of life's necessities". *Farmer*, 511 U.S. at 834. For the subjective component, he must show that officials acted with "deliberate indifference"; that is, that they were aware of the deprivation of life's necessities but failed to take "reasonable measures to abate it." *Id*. at 834, 847.

Beginning with the subjective component, the Amended Complaint alleges that the Defendants intentionally forced Mr. Gillings to sleep in a "cage" without access to toilet facilities due to his refusal to share a cell with Mr. Rosado. Indeed, there was an unoccupied cell

11

available, but for some unarticulated reason, prison officials refused him access and allowed him to use a cell only after he consented to be housed with Mr. Rosado. Construing the allegations most favorably to Mr. Gillings, such facts could reasonably demonstrate that officials intended or at least knew that by putting Mr. Gillings in the "cage", they were depriving him of a measure of life's necessities and that the absence of such necessities would change his willingness to share a cell with Mr. Rosado. Viewed as such, conduct of the Defendants is sufficient to satisfy the subjective standard.

As to the objective component, the Court considers the alleged conditions of confinement which include "circumstances, nature, and duration" and other attributes with no single attribute being dispositive. *DeSpain v. Uphoff,* 264 F.3d 965, 974 (10th Cir.2001). Two common considerations are the severity and the duration of deprivation, which are often inversely proportional. Minor deprivations suffered for long periods and major deprivations of shelter, food, drinking water, and sanitation for short periods may meet the standard.

Here, the allegations involve several distinct attributes. Mr. Gillings was 1) forced to sleep in a "cage", 2) for two nights, 3) with no access to toilet facilities, only containers for disposal of his waste.

Initially, the Court pauses to address the concept of sleeping in a "cage". Use of the word "cage" suggests an enclosure that is customarily used to restrain animals – perhaps without a roof or walls, perhaps without any privacy, perhaps exposed to the elements. But the Amended Complaint provides no specific information as to its size, configuration, visibility to passersby or exposure to the elements. The only specific information provided in the Amended Complaint is that the "cage" was large enough to hold a mattress on the floor, and that prison officials provided Mr. Gillings with a pillow, a mattress, and a blanket. During the first night, Mr.

12

Gillings was cold and was provided an additional blanket. In the absence of a more specific description, the Court cannot determine and may not speculate as to what type of confinement the "cage" actually was. Consequently, the Court cannot draw any inference as to whether Mr. Gillings was exposed to the elements, unreasonable restrained or the like. The "cage" therefore for purposes of analysis is something other than cell that has a mattress and no toilet facilities.

Mr. Gillings appears to focus on the absence of toilet facilities. The Amended Complaint states that he spent two nights in the "cage", was given containers for his bodily waste, that he defecated into the bag the first night and the smell was terrible, but there is no indication that the bag was not sealable, or that it ruptured. There is no indication that Mr. Gillings had a similar experience the second night. Ultimately, when he was let out of the "cage" in the morning, he was able to dispose of the waste containers and take a shower.

Courts have concluded that prison officials may temporarily deprive inmates of toilet facilities without violating the Eighth Amendment – even if it results in prisoners remaining in close proximity to their own feces if contained in some manner. *See DeSpain*, 264 F.3d at 974; *see also Gilblom v. Gillipsie*, 435 Fed. App'x 165, 168-69 (3rd Cir. 2011) (unpublished). In *DeSpain*, prisoners were transferred to segregated cells. In protest, some of the prisoners clogged their toilets, causing the cells to flood. Prison officers turned off the water to the toilets. For two days, DeSpain and the others in segregation remained in their cells with standing water contaminated with urine and feces. The Tenth Circuit held that exposure to uncontained human waste violated the Eighth Amendment's prohibition against cruel and unusual punishment.

In *Gilblom*, an inmate reported to jail to serve 48 hours, and jail staff received information that he was attempting to smuggle tobacco into the jail. In an effort to find the tobacco, jail staff placed him in a "dry cell", in which water to the toilet had been turned off. He

13

was told that after he defecated, someone would search his feces for tobacco. Over the course of the next day-and-a-half, he defecated four times, and because no one would search his feces or turn on the water to the toilet, he remained in close proximity to his own feces for approximately 36 hours. The Third Circuit held that, even though the conditions of the inmate's confinement were "unsettling" and the jail staff's refusal to search the feces for contraband was "inexcusable", the inmate's Eighth-amendment rights had not been violated.

The facts alleged by Mr. Gillings are mild in comparison to *DeSpain* and *Gilblom*. Mr. Gillings was exposed to his own waste for a maximum of an overnight period as compared to two days in *DeSpain* and one-day-and-one-half in *Gilblom*. Further, his waste was confined in a container that was disposed of each morning, as compared to floating in standing water or being open to the air. The Court finds that the facts as alleged in the Amended Complaint are not sufficient to satisfy the objective component requirement. Consequently, no viable claim has been stated. However, assuming that sufficient factual allegations were made, the Court turns to the question of whether it was clearly established that conduct compelling an inmate to sleep in a "cage" for two nights without toilet facilities would violate Mr. Gilling's Eighth Amendment rights.

### 2. Clearly Established Violation

The Defendants argue that even if the Amended Complaint sufficiently alleges a constitutional violation, Mr. Gillings cannot show that it was clearly established that the conduct he was subjected to was violative of his constitutional right to be free from cruel and unusual punishment. The burden is on Mr. Gillings to point to Supreme Court or Tenth Circuit precedent or the clear weight of other circuit courts that recognize that the circumstances presented here would constitute a constitutional violation. *Schwartz v. Booker,* 702 F.3d 573, 587–88 (10th Cir. 2012); *see also Thomas v. Durstanti,* 607 F.3d 655, 669 (10th Cir.2010).

Mr. Gillings need not to adduce a case with identical facts, but he must show that "a precedent involves '*materially similar conduct*' or applies 'with *obvious clarity*' to the conduct at issue." *Apodaca v. Raemisch*, --- F.3d ---, No. 15-1454, 2017 WL 3138361, at *7 (10th Cir. July 25, 2017) (quoting *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964-65 (10th Cir. 2016) (emphasis in *Estate of Reat*). For example, it is not sufficient to ask whether it is "clearly established" that the Fourth Amendment prohibits the use of excessive force in effecting an arrest; rather, the court examines whether that constitutional principle has previously been found to prohibit particular behavior such as "shoot[ing] a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Brosseau v. Haugen* 543 U.S. 194, 198–200 (2004).

Mr. Gillings relies on one Tenth Circuit opinion, *DeSpain v. Uphoff,* 264 F.3d 965 (10th Cir.2001), which is discussed above, and several opinions from other circuits. The difficulty with *DeSpain* is that its facts differ substantially from those presented here. It addresses wide-spread, free-floating human waste, which inmates could not escape. In contrast, Mr. Gillings was exposed only to his own waste, for which he was given and used containers. In addition, *DeSpain* is unrelated to inmates being forced to sleep outside. The Court cannot say that it involves materially similar conduct or applies with obvious clarity to the circumstances alleged in the Amended Complaint. Thus, although *DeSpain* reflects one scenario in which exposure to human waste is a violation of the Eighth Amendment, it does not put prison officials on notice that putting an inmate in a "cage" and providing receptacles for waste was a constitutional violation.

The other cases Mr. Gillings cites suffer from the deficiency. In *LaReau v. MacDougall*, 473 F.2d 974 (2d Cir. 1972) an inmate was deprived of modern toilet facilities in his cell for a

15

period of five days. In *Sperow v. Melvin*, No. 96-4219, 1999 WL 450786 (8th Cir. June 24, 1999) an inmate was confined in an extremely unsanitary cell with uncontained human waste on the floor, mattress, and walls. In *Fruit v. Norris*, 905 F.2d 1147 (8th Cir. 1990), inmates who were bathed in raw sewage while cleaning out the prison's raw sewage lift-pump station. In *Michaud v. Sheriff of Essex County*, 458 N.E. 702 (Mass. 1983) a state court concluded that holding inmates in cells without indoor plumbing, requiring the inmates to urinate and defecate in buckets during their entire incarceration, violates the Eighth Amendment.

In addition to the cases Mr. Gilings cites, the Court has searched for precedent from the Supreme Court and Circuit Courts discussing whether prisoners have an Eighth-amendment right not to be forced to sleep outside without access to toilet facilities. It was only able to find one that is similar to any degree - *Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999). In *Palmer*, prison officials forced Palmer and 48 other inmates to sleep in a field where they had been working in a 20' x 30' area bounded by poles and a string of lights. The prisoners were not provided with shelter, jackets, blankets, or other means of keeping warm. The temperature fell below 59 degrees Fahrenheit, and the prisoners huddled together to keep warm and built earthen walls to protect them from the wind. When the plaintiff needed to urinate and defecate, prison officials told him that he could only relieve himself within the confined space. The Fifth Circuit held that these circumstances "constituted a denial of the minimal civilized measure of life's necessities." *Id*. at 354.

*Palmer*'s facts and the allegations in the Amended Complaint differ in several material aspects. The prisoners in *Palmer* were not provided with any bedding or means to keep warm, and they suffered significantly from the cold during the night. In contrast, Mr. Gillings initially received a pillow, mattress, and blanket. He became cold during the night, and requested an

16

additional blanket, which was provided. The Amended Complaint does not allege that the two blankets were inadequate to keep him warm. Further, the prisoners in *Palmer* were forced to urinate and defecate on the ground in the small area, exposing them to uncontained human waste through the night. But Mr. Gillings received containers for his waste that provided some protection from exposure. In light of these differences, the Court cannot say the conduct in *Palmer* is materially similar to that alleged in the Amended Complaint or that *Palmer* obviously prohibited the Defendants from forcing Mr. Gillings to sleep outside without access to toilet facilities. Thus, *Palmer* does not put prison officials on notice that putting an inmate in a "cage" and providing receptacles for waste was a constitutional violation.

The Court therefore finds that the Amended Complaint fails to sufficiently allege a constitutional violation by Lt. Banvelos and Lt. Yagar, but even it did, an inmate's right to be free from being forced to sleep outside for two nights without access to toilet facilities and to collect his waste in containers was not clearly established at the time the incidents in this case occurred. Accordingly, Mr. Gillings' first claim is dismissed.[5] For the reasons previously stated, Mr. Gillings' second claim is dismissed as well.[6]

---

[5] Generally, when the Court dismisses claims under Fed. R. Civ. P. 12(b)(6), it grants the plaintiff leave to amend his or her complaint to attempt to cure its deficiencies. However, leave to amend need not be granted if the amendment would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). In addition to the allegations in the Amended Complaint, Mr. Gillings provided the Court with several other statements providing additional details surrounding the events giving rise to this lawsuit. The statements do not differ materially from the Amended Complaint's allegations. Reviewing them, the Court does not find any additional facts that would show that the Defendants violated Mr. Gillings' clearly established constitutional rights, and if the Court were to allow amendment, they would still be entitled to qualified immunity. Thus, any amendment to the Amended Complaint would be futile, and the Court does not grant Mr. Gillings leave to do so.

[6] Inasmuch as Mr. Gillings' first claim has been dismissed under Fed. R. Civ. P. 12(b)(6) on grounds that the Defendants are entitled to qualified immunity and his second claim has been dismissed as moot, the Court need not address the Defendants' argument that the applicable statute of limitation bars Mr. Gillings' claims.

**CONCLUSION**

For the foregoing reasons, although on different grounds, the Court **ADOPTS** the Magistrate Judge's April 12, 2017 Recommendation **(#110)** that Mr. Gillings' claims be dismissed and the Motion **(#84)** is **GRANTED**. The Clerk of Court shall close this case.

Dated this 11th day of August, 2017

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge